# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPITOL HILL BAPTIST CHURCH, | ) |
| *Plaintiff*, | ) ) ) ) |
| v. | ) CIVIL ACTION NO. 1:20-cv-2710 |
| MURIEL BOWSER, in her official capacity as Mayor of the District of Columbia, and the DISTRICT OF COLUMBIA, | ) ) ) ) ) |
| *Defendants*. | |

## BRIEF OF 34 UNITED STATES SENATORS
## AS *AMICI CURIAE* IN SUPPORT OF
## PLAINTIFF'S MOTION FOR AN EXPEDITED PRELIMINARY INJUNCTION

John M. Gore (D.C. Bar No. 502057)
Anthony J. Dick (D.C. Bar No. 1015585)
J. Benjamin Aguiñaga*
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: 202.879.3939
ajdick@jonesday.com

Richard D. Salgado*
JONES DAY
2727 N. Harwood St., Suite 600
Dallas, TX 75201
Telephone: 214.969.3620
rsalgado@jonesday.com

*Counsel for Amici Curiae*

*pro hac forthcoming

## TABLE OF CONTENTS

                                                    **Page**

TABLE OF AUTHORITIES ................................................................................................... ii
INTEREST OF *AMICI CURIAE* ............................................................................................ 1
STATEMENT OF *AMICI CURIAE* ...................................................................................... 3
CONCLUSION ......................................................................................................................... 7

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Calvary Chapel Dayton Valley v. Sisolak*,
  140 S. Ct. 2603 (2020) .................................................................................................... 5, 7

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
  138 S. Ct. 2448 (2018) ......................................................................................................... 3

*Maryville Baptist Church, Inc. v. Beshear*,
  957 F.3d 610 (6th Cir. 2020) ............................................................................................... 6

*Pahls v. Thomas*,
  718 F.3d 1210 (10th Cir. 2013) ........................................................................................... 3

*Reed v. Town of Gilbert, Ariz.*,
  576 U.S. 155 (2015) ............................................................................................................ 4

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
  515 U.S. 819 (1995) ................................................................................................. 3, 4, 5, 7

*S. Bay United Pentecostal Church v. Newsom*,
  140 S. Ct. 1613 (2020) ........................................................................................................ 5

*Soos v. Cuomo*,
  __ F. Supp. 3d __, 2020 WL 3488742 (N.D.N.Y. June 26, 2020) .................................... 4, 6

*Turner Broad. Sys., Inc. v. FCC*,
  512 U.S. 622 (1994) ............................................................................................................ 5

**CONSTITUTIONAL AUTHORITIES**

U.S. Const., art. I ....................................................................................................................... 1

**OTHER AUTHORITIES**

Local Rule 7 ............................................................................................................................... 1

## INTEREST OF *AMICI CURIAE*[1]

*Amici* are United States Senators. They include Senator Roger F. Wicker of Mississippi, Senator Mitch McConnell of Kentucky, Senator James M. Inhofe of Oklahoma, Senator Pat Roberts of Kansas, Senator Mike Enzi of Wyoming, Senator John Cornyn of Texas, Senator Lindsey Graham of South Carolina, Senator John Thune of South Dakota, Senator John Barrasso of Wyoming, Senator James E. Risch of Idaho, Senator Roy Blunt of Missouri, Senator Jerry Moran of Kansas, Senator John Boozman of Arkansas, Senator John Hoeven of North Dakota, Senator Marco Rubio of Florida, Senator Rand Paul of Kentucky, Senator Tim Scott of South Carolina, Senator Ted Cruz of Texas, Senator Bill Cassidy of Louisiana, Senator James Lankford of Oklahoma, Senator Tom Cotton of Arkansas, Senator Steve Daines of Montana, Senator David Perdue of Georgia, Senator Thom Tillis of North Carolina, Senator Ben Sasse of Nebraska, Senator John Kennedy of Louisiana, Senator Cindy Hyde-Smith of Mississippi, Senator Marsha Blackburn of Tennessee, Senator Kevin Cramer of North Dakota, Senator Mitt Romney of Utah, Senator Mike Braun of Indiana, Senator Josh Hawley of Missouri, Senator Rick Scott of Florida, and Senator Kelly Loeffler of Georgia.

As Senators, *amici* have a strong interest in ensuring laws enacted by Senate—including, as relevant here, the Religious Freedom Restoration Act ("RFRA")—are interpreted in a manner that is consistent with their text and history. *Amici* likewise have a strong interest in ensuring that the First Amendment, which is RFRA's constitutional backdrop, is enforced with vigor. Finally, as Senators, *amici* hold constitutional authority to oversee the District of Columbia. U.S.

---

[1] In accordance with Local Rule 7(o), *amici* certify that (1) this brief was authored entirely by their counsel and not by counsel for any party, in whole or in part; (2) no party or counsel for any party contributed money to fund preparing or submitting this brief; and (3) no other person—beyond *amici* and their counsel—contributed money that was intended to fund preparing or submitting the brief.

Const., art. I, § 8, cl. 17.  *Amici* thus have a unique interest in the District's compliance with RFRA and the Constitution.  Accordingly, *amici* respectfully support Plaintiff's motion for an expedited preliminary injunction.

## STATEMENT OF *AMICI CURIAE*

Freedom of speech "is essential to our democratic form of government." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018). That freedom prohibits the government from "regulat[ing] speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). And as a corollary, it ensures that the government "may not favor one speaker over another." *Id.*

Under the Mayor's directives, a pastor may conduct a massive organized outdoor political demonstration on a Saturday, but may not hold an outdoor church service for his congregants the next morning. Such selective enforcement of COVID-19 restrictions against houses of worship violates a core tenet of free speech. *See Pahls v. Thomas*, 718 F.3d 1210, 1238 (10th Cir. 2013) ("When a law or policy, though facially legitimate, is selectively enforced or subject to exceptions, it may suggest that content or viewpoint discrimination is afoot.").

Whether viewed as a matter of free speech, the freedom of assembly, or the free exercise of religion protected by the Constitution and RFRA, the result is the same: the Mayor's discrimination against houses of worship rests on a mistaken, and unconstitutional, premise that one particular exercise of free speech—a church's desire to gather together and worship their God—is subordinate to other First Amendment-protected activities. This Court should enforce the First Amendment's promise of free speech for all by issuing a preliminary injunction to prevent the Mayor and the District of Columbia from prohibiting outdoor religious services that adhere to COVID-19 safety protocols.

1. Under current District of Columbia COVID-19 restrictions, an outdoor religious service may not exceed 100 persons. ECF 4-16 at 7; ECF 4-22 at 2. With over 850 congregants, the Capitol Hill Baptist Church (the "Church") cannot hold an outdoor service under the current

3

restrictions. ECF 5 at 1, ¶ 5. The Church thus sought a waiver for outdoor services based on the Church's commitment to socially distance each household and require that virtually all attendees wear masks. *Id.* at 2, ¶ 11. After remaining silent on the Church's application for over three months, the Mayor's office eventually notified the Church that "[w]aivers for places of worship above that expanded capacity [of 100] are not being granted at this time." *Id.*; ECF 5-7 at 2.

But the Mayor has treated organized mass demonstrations differently. On June 6, the Mayor addressed thousands of demonstrators (pressed shoulder to shoulder) and proclaimed: "It's so wonderful to see everybody peacefully protesting, wearing their masks." ECF 4-29 at 2. And over the summer, the District's Metropolitan Police Department shut down city streets to accommodate numerous demonstrations. *See* ECF 3-1 at 17–20 (citing examples). Directly asked on MSNBC about the disparate treatment between houses of worship and mass demonstrations, the Mayor answered: "First Amendment protests and large gatherings are not the same. . . . [I]n the United States of America, people can protest." ECF 4-3 at 22.

**2.** The Mayor's candid answer on MSNBC—together with her refusal to grant waivers to houses of worship "at this time" and her accommodation of organized mass political demonstrations—show that the Mayor is enforcing COVID-19 restrictions by "favor[ing] one speaker over another." *Rosenberger*, 515 U.S. at 828; *see Soos v. Cuomo*, __ F. Supp. 3d __, 2020 WL 3488742, at *12 (N.D.N.Y. June 26, 2020) ("[B]y acting as they did, Governor Cuomo and Mayor de Blasio sent a clear message that mass protests are deserving of preferential treatment.").

The Mayor's policy of disparate treatment is unconstitutional unless it survives strict scrutiny. *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) ("Content-based laws— those that target speech based on its communicative content—are presumptively unconstitutional

and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."); *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994) ("[L]aws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference."); *see also Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2608 (2020) (Alito, J., dissenting from denial of application for injunctive relief) ("[T]he directive's treatment of houses of worship must satisfy strict scrutiny[.]").[2]

Yet the Mayor has no compelling government interest in enforcing restrictions against a group of 850 socially distanced, mask-wearing outdoor worshippers, while exempting a group of thousands of non-socially distanced outdoor demonstrators. *Cf. id.*, 140 S. Ct. at 2612 (Kavanaugh, J., dissenting from denial of application for injunctive relief) ("Unless the State provides a sufficient justification otherwise, it must place religious organizations in the favored and exempt category."). The Mayor's only public justification for this distinction is that "First Amendment protests and large gatherings are not the same." ECF 4-3 at 22. But that justification turns the First Amendment on its head: "favoring one viewpoint over others is anathema to the First Amendment." *Id.* at 2608 (Alito, J., dissenting from denial of application for injunctive relief); *Rosenberger*, 515 U.S. at 828 ("In the realm of private speech or

---

[2] The Mayor dismisses Justice Alito's dissent in *Calvary Chapel Dayton Valley* on the ground that "the [Supreme] Court rejected" it, referring to the Supreme Court's denial of an injunction. ECF 15 at 35. But the Mayor overlooks that the Supreme Court applies a different (and heightened) standard in considering applications for injunctions than does this Court. *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief) (noting that when the Supreme Court grants an injunction it "grants judicial intervention that has been withheld by lower courts," and emphasizing that "[t]his power is used where the legal rights at issue are *indisputably clear* and, *even then*, sparingly and only in the most critical and exigent circumstances" (citations and quotation marks omitted; emphases added)). As a result, the Mayor's attempt to draw a negative inference from the fact that Justice Alito's writing was a dissent is misguided.

expression, government regulation may not favor one speaker over another. Discrimination against speech because of its message is presumed to be unconstitutional." (citation omitted)).

The Mayor cannot—under the guise of the First Amendment—pick and choose which speakers and messages (similarly situated in all relevant respects) deserve special treatment. And as a result, the Mayor has no compelling government interest in distinguishing between otherwise similar speakers and messages. *Cf. Soos*, 2020 WL 3488742, at *12 ("[T]here is nothing materially different about a graduation ceremony and a religious gathering such that defendants' justifications for a difference in treatment can be found compelling.").

Neither is the Mayor's unique treatment of houses of worship narrowly tailored to achieve any compelling government interest. It would be circular, of course, to ask whether the Mayor's treatment of houses of worship is narrowly tailored to achieve her asserted interest in distinguishing between organized outdoor political demonstrations and outdoor worship services. And even with regard to the Mayor's general interest in protecting the public health, there is no basis to conclude that an outdoor service under the restrictions the Church has proposed would be any more of a danger to the public health than an organized political demonstration.

If anything, the Church's pledge to enforce *heightened* safety protocols, including social distancing, suggests that the Church's outdoor services would be *less* of a danger to the public health than organized demonstrations where social distancing is nearly impossible and safety protocols are exceedingly difficult to enforce. The upshot is that the way the Mayor "treat[s] religious and non-religious activities suggests that [her enforcement policy] do[es] not amount to the least restrictive way of regulating [houses of worship]." *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 613 (6th Cir. 2020). The Mayor's policy of selective enforcement against some speakers but not others similarly situated fails strict scrutiny.

**3.** The Mayor's inability to satisfy strict scrutiny does not hinder her efforts to promote other First Amendment-protected activity, such as organized political demonstrations. "Public protests, of course, are themselves protected by the First Amendment, and any efforts to restrict them would be subject to judicial review." *Calvary Chapel Dayton Valley*, 140 S. Ct. at 2607 (Alito, J., dissenting from denial of application for injunctive relief). Our Nation is better and stronger through peaceful public debate. A constitutional problem arises only when "important issues" represented by organized demonstrations lead to special treatment for those speakers, while other similarly situated speakers and messages do not enjoy the same treatment. *Id.* at 2608.

But there is an easy fix. The Mayor may recognize *all* First Amendment-activity as equal, and draw any necessary distinctions—consistent with the First Amendment—without regard to the identity of the speaker or the content of her message. Applied here, the Mayor simply may treat the Church's proposed outdoor service as she would treat an organized outdoor political demonstration with more than 100 people—crediting, in particular, the Church's commitment to enforce robust safety protocols. Allowing the Church to worship outdoors thus would not, and need not, endanger the Mayor's interest in promoting other First Amendment-protected activities or demonstrators' interest in peacefully expressing themselves.

## CONCLUSION

*Amici* urge this Court to enforce the First Amendment's guarantee that government cannot "favor one speaker over another." *Rosenberger*, 515 U.S. at 828. To that end, *amici* respectfully ask this Court to grant the Church's motion for an expedited preliminary injunction.

Dated: October 7, 2020                    Respectfully submitted,


*/s/ Anthony J. Dick*
John M. Gore (D.C. Bar No. 502057)
Anthony J. Dick (D.C. Bar No. 1015585)
J. Benjamin Aguiñaga*
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001
Telephone: 202.879.3939
ajdick@jonesday.com

Richard D. Salgado*
JONES DAY
2727 N. Harwood St., Suite 600
Dallas, TX 75201
Telephone: 214.969.3620
rsalgado@jonesday.com

*Counsel for Amici Curiae*

*\*pro hac forthcoming*